■ In the Matter of PABLO COSTELLO, Petitioner, v NEW YORK STATE BOARD OF PAROLE et al., Respondents. [957 NYS2d 486]—

Lahtinen, J.

The officer's wife, his four children and other family members gave oral and written victim impact statements in October 2009. The Board ordered a rescission hearing and, following an unsuccessful CPLR article 78 proceeding by petitioner to prohibit the Board from conducting the rescission hearing, such hearing was eventually conducted in October 2010. Evidence presented by petitioner included his laudable achievements while incarcerated as well as support from, among others, a college professor and a member of the clergy. The Board nonetheless unanimously voted to rescind the release date finding that the "compelling statements" from the victim's family constituted significant new information. His administrative appeal was unsuccessful and this proceeding ensued.

Petitioner contends that the victim impact statements were not significant new information and, thus, his parole release date should not have been rescinded. Under circumstances such as prevail here, "the Board's broad discretion to rescind parole was limited only by the requirement that there be substantial evidence of significant information not previously known by the Board" (*Matter of Pugh v New York State Bd. of Parole*, 19 AD3d 991, 992 [2005], *lv denied* 5 NY3d 713 [2005] [citation omitted]; *see Matter of Diaz v Evans*, 90 AD3d 1371, 1372 [2011]; 9 NYCRR 8002.5 [b] [2] [i]). There has been a growing awareness over the last several decades of the importance of keeping crime victims apprised and permitting their input (*see e.g.* Executive Law art 23; Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 440.50 at 152), and statements from victims are one of the statutorily required considerations for parole release (*see* Executive Law § 259-i [2] [c] [A] [v]). Thus, "victim impact statements can constitute significant information which, when submitted to [the Board] even after its determination, may justify the temporary suspension or rescission of parole" (*Matter of Raheem v New York State Bd. of Parole*, 66 AD3d 1270, 1272 [2009], *lv denied* 14 NY3d 702 [2010]; *see Matter of Diaz v Evans*, 90 AD3d at 1372; *Matter of Pugh v New York State Bd. of Parole*, 19 AD3d at 993). Where victims have not previously submitted statements, the "argument that these statements are not new information because [the Board] could anticipate the impact of the crimes on the victims is without merit, as their actual subjective experience is clearly significant information previously unknown to [the

Board]" (*Matter of Raheem v New York State Bd. of Parole*, 66 AD3d at 1272).

Review of the record reveals that this is not a situation of rehashing or simply embellishing previously provided victim statements. The victims' voices had been virtually unheard before October 2009. As noted near the beginning of the rescission hearing, victim impact statements had not been available at petitioner's August 2009 parole appearance and no victim impact statements had been provided for the three prior times that he had been considered for parole. The 18-page presentence report prepared in 1980 following petitioner's conviction contained three paragraphs written by the probation officer purporting to represent the statement of the family; but most of this information was a description of the deceased officer's background, character, and accomplishments. There is no discussion of the impact on the family other than a one sentence reference to the family's belief that a fatal heart attack suffered by the deceased officer's Rabbi brother two weeks after the shooting was a result of the effects of the murder.

The brief statements attributed to the deceased officer's wife by the probation officer who prepared the 1980 presentence report were about her husband's character and her feelings on appropriate punishment. There was no direct statement regarding the impact of his death on her. No statements were reported from the children, who were then ages 22, 19, 15 and 13. No family member addressed the court at sentencing. In contrast, the October 2009 statements from the officer's wife and children (as well as other family members) set forth directly for the first time the many different and devastating impacts, some of which are ongoing, suffered by the family. Under our precedent, the Board did not err in determining that this was significant new information, and we find unpersuasive petitioner's attempts to distinguish our holdings in *Pugh*, *Raheem*, and *Diaz*.[2]

Our review is limited and we cannot substitute our judgment for that of the Board. It was within the Board's discretion to rescind parole in light of the substantial evidence of significant information not previously known by the Board (*see Matter of Diaz v Evans*, 90 AD3d at 1372; *Matter of Pugh v New York State Bd. of Parole*, 19 AD3d at 992; *see also Matter of Raheem v New York State Bd. of Parole*, 66 Ad3d at 1272). The remaining arguments are unavailing.

Rose, J.P., Kavanagh and McCarthy, JJ., concur.

---

2. The dissent has offered no meaningful distinction of these cases nor suggested that we should overrule the holdings.

Spain, J. (dissenting). Because, in my view, the record does not support the decision of respondent Board of Parole to order a rescission hearing nor does it reflect the presence of substantial evidence justifying the Board's decision to rescind parole (*see* 9 NYCRR 8002.5 [b] [2] [i]; [d] [1]), I respectfully dissent.

Petitioner was sentenced in 1980—after rejecting a plea offer of 5 to 15 years—to 25 years to life in prison following a trial for his nonshooter role at age 22 in a 1978 armed robbery. New York City police officer David Guttenberg unexpectedly walked in on the robbery and was tragically shot and killed by petitioner's armed accomplice, resulting in petitioner's conviction of felony murder and other crimes. In August 2009, at age 53, after serving over 31 years in prison and at his third appearance before the Board, petitioner was granted parole with an open release date of September 29, 2009, subject to certain conditions. At the parole hearing, the Board considered all relevant factors including petitioner's institutional record, which reflected his exemplary educational and program accomplishments, his solid release plans and the seriousness of his offense (*see* Executive Law § 259-i). Also considered were an opposition letter from the New York City Police Commissioner and petitioner's extensive 1980 presentence report, which reflects that Guttenberg's widow, the mother of his four children, was interviewed by the Probation Department and expressed the grief and torment of his surviving family members (*see* CPL 390.30 [3]). The Board's decision to grant discretionary release reflected its determination that petitioner "will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law" (Executive Law § 259-i [2] [c] [A]).

Unfortunately, it appears that the Kings County District Attorney did not notify Guttenberg's family members of their right to submit victim impact statements to the Board or to appear before the Board (*see* CPL 440.50 [1]; *see also* Executive Law § 646-a), and no such statements were submitted. This case, once again, "reveals an unfortunate consequence of the lack of a statute or rule requiring *the Board* to timely notify crime victims of when an inmate will be considered for parole" (*Matter of Pugh v New York State Bd. of Parole*, 19 AD3d 991, 992 n [2005], *lv denied* 5 NY3d 713 [2005] [emphasis added]).

Following media outcry and just days before petitioner's release date, the Board temporarily suspended his parole release for "Records Completion," and thereafter held a victim impact meeting at which Guttenberg family members provided state-

ments recounting their ongoing grief over their loss. The Board then held a rescission hearing in October 2010, and thereafter rescinded the prior grant of parole, denied parole, and imposed a 24-month hold, characterizing as "new information" the "compelling statements made by the [officer's] family" regarding their loss and anguish since, and the ongoing impact of, his death. The Board reversed itself and, although no new information was elicited regarding petitioner or the crime, concluded that parole release "would so deprecate the serious nature of the instant offense as to undermine respect for the law."

As relevant here, the Board has broad discretion to temporarily suspend a parole release date, but only upon a finding that "significant information . . . existed . . . where such information was not known by the [B]oard" (9 NYCRR 8002.5 [b] [2] [i]; *see Matter of Raheem v New York State Bd. of Parole*, 66 AD3d 1270, 1272 [2009], *lv denied* 14 NY3d 702 [2010]; *Matter of Pugh v New York State Bd. of Parole*, 19 AD3d at 992). In my view, while the recent statements of the ongoing grief of the officer's family are undeniably compelling, indeed heartbreaking, they are not the type of "new" information that was "unknown" to the Board at the time it granted parole, so as to justify either a temporary or a full rescission of parole (*see e.g. Matter of Brooks v Travis*, 19 AD3d 901, 901-902 [2005]). That is, the officer's wife had been interviewed by the Probation Department at the time of sentencing as reflected in the presentence report (*compare Matter of Raheem v New York State Bd. of Parole*, 66 AD3d at 1272). Clearly, her ongoing loss and grief and that of their children and other family members cannot be said to have been unknown, unanticipated or, unfortunately, unusual for a surviving family. While the family's "actual subjective experience is clearly significant" (*Matter of Raheem v New York State Bd. of Parole*, 66 AD3d at 1272) and certainly an appropriate factor for the Board to consider in the determination of whether parole should be granted, it was not unknown and it should not have been considered as—and did not constitute—information that was not previously known so as to upend the grant of parole.

Moreover, the legislative framework governing parole decisions clearly contemplates that while the Board may waive the requirement, victims ordinarily will be heard *prior to*—not after—a parole determination, and for good reasons (*see* Executive Law § 259-i [2] [c] [A] [v]; 9 NYCRR 8002.4 [d]). This should remain the practice, with only rare, limited exceptions. The troubling practice followed here of failing to notify a deceased victim's family of an inmate's appearance before the Board, and

of foregoing providing victim impact statements until parole has been granted after a hearing, subverts the entire process (*see e.g. Matter of Diaz v Evans*, 90 AD3d 1371, 1372 [2011]). Courts should be loathe to condone what could become a trend in the parole process in which certain victim impact statements are held back until after a decision to grant parole is made, forcing the Board to confront unabashed media frenzy, public pressure and familial outrage, and to then entertain newly drafted but belated victim impact statements aimed at undoing considered Board decisions awarding parole.

Finally, those who oppose petitioner's parole release openly advocate the recurring position that an inmate convicted for the death of a law enforcement officer—even a nonshooter convicted of felony murder, as here—should *never* be released on parole. It bears emphasis that this was not and is not the law. Even under New York's most recent murder in the first degree statute, only an intentional killing by a defendant, or commanded by a defendant, would quality for life without the possibility of parole (*see* Penal Law §§ 70.00 [5]; 125.27 [1] [a] [i], [vii]; *People v Mateo*, 2 NY3d 383, 404-405 [2004], *cert denied* 542 US 946 [2004]; *see also* Penal Law §§ 125.25 [5]; 125.26 [1]). Petitioner's conviction and sentence here allow for parole release. In my view, given the overwhelming evidence before the Board in 2009 supporting its conclusion that parole is appropriate (*see* Executive Law § 259-i [2] [c] [A]), I cannot conclude—even based upon the belated but compelling victim impact statements—that petitioner was "never rightfully entitled" to parole release so as to justify parole rescission (*Matter of Tremarco v New York State Bd. of Parole*, 87 AD2d 114, 119 [1982], *appeal dismissed* 58 NY2d 968 [1983]; *accord Matter of De Zimm v New York State Bd. of Parole*, 135 AD2d 66, 67 n 2 [1988]).

Adjudged that the determination is confirmed, without costs, and petition dismissed.